USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/27/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

IN RE:

GENERAL MOTORS LLC IGNITION SWITCH
LITIGATION

*This Document Relates to All Actions*

-------------------------------------------------------------------------x

14-MD-2543 (JMF)
14-MC-2543 (JMF)

### PRESERVATION ORDER NO. 7:
### AGREED UPON ORDER REGARDING THE
### INSPECTION OF CERTAIN IGNITION SWITCH PARTS
### GOVERNED BY NHTSA RECALL CAMPAIGN 14v-047000

**I.     Introduction**

General Motors LLC ("New GM") and Plaintiffs, through Lead Counsel for the MDL Plaintiffs, (collectively, the "Parties") jointly submit this Order for approval and entry by the Court. This Order sets forth an agreed plan for testing of certain recalled ignition switch parts covered by National Highway Traffic Safety Administration ("NHTSA") Recall Campaign 14v-047000 and modifies New GM's obligations for maintaining and preserving those recalled ignition switch parts.

**II.    Background**

1.      On June 12, 2014, the United States Judicial Panel on Multidistrict Litigation assigned *In re: General Motors LLC Ignition Switch Litigation*, 14-MD-2543 ("MDL 2543"), to this Court for coordinated or consolidated pretrial proceedings. (14-MD-2543, Docket No. 1.)

2.      On June 25, 2014, this Court entered Order No. 1, which stated, among other things, that "[a]ll parties and their counsel are reminded of their duty to preserve evidence that may be relevant to this action." (14-MD-2543, Docket No. 19 at 12.) The Order further stated that "[u]ntil the parties reach an agreement on a preservation plan or the Court orders otherwise,

each party shall take reasonable steps to preserve all documents, data and tangible things containing information potentially relevant to the subject matter of this litigation." (*Id.*)  Further, the Parties had at all times been subject to preservation obligations as soon as the duty to preserve arose.

3. On August 11, 2014, this Court entered an Agreed Order Regarding the Preservation of Ignition Switch Parts Governed by NHTSA Recall Campaign 14v-047000 ("Agreed Parts Preservation Order No. 1").

4. NHTSA Recall Campaign 14v-047000 concerns the safety recall of ignition switch parts from the following make, model, and model year vehicles:

| | |
|---|---|
| Chevrolet Cobalt | 2005-2010 |
| Chevrolet HHR | 2006-2011 |
| Pontiac Solstice | 2006-2010 |
| Pontiac G5 | 2007-2010 |
| Saturn Ion | 2003-2007 |
| Saturn Sky | 2007-2010 |

Specifically, on February 7, 2014, New GM notified NHTSA that it was conducting a safety-related recall for ignition switches in model year 2005-2007 Chevrolet Cobalt vehicles and 2007 Pontiac G5 vehicles.  This recall, GM recall number 13454, affected 619,122 vehicles.  On February 25, 2014, New GM informed NHTSA that it was conducting a safety-related recall for ignition switches in model year 2006-2007 Chevrolet HHR vehicles, 2006-2007 Pontiac Solstice vehicles, 2003-2007 Saturn Ion vehicles, and 2007 Saturn Sky vehicles.  This recall, GM recall number 13454, affected 748,024 vehicles.  On March 28, 2014, New GM notified NHTSA that it was recalling certain model year 2008-2010 Chevrolet Cobalt, Saturn Sky, and Pontiac G5 and

Solstice vehicles, and 2008-2011 Chevrolet HHR vehicles.  This recall, GM recall number 14092, affected 823,788 vehicles.  GM recall numbers 13454, 14063, and 14092 are under NHTSA Recall Campaign 14v-047000. The total number of vehicles affected by NHTSA Recall Campaign 14v-047000 is 2,190,934.

5. As of July 23, 2014, New GM had received, or was in the process of receiving, ignition switch parts from more than 400,000 vehicles affected by NHTSA Recall Campaign 14v-047000.

6. Agreed Parts Preservation Order No. 1 obligated New GM to preserve 403,525 recalled ignition switch parts covered by NHTSA Recall Campaign 14v-047000 and not associated with any named plaintiff in a case transferred to MDL 2543, "[u]nless otherwise instructed by the Court."  Specifically, New GM was obligated to preserve the following number of recalled ignition switch parts:

| GM Recall | Make | Model | Model Year | Number of Parts to Be Preserved |
|---|---|---|---|---|
| 14063 | Saturn | ION | 2003 | 18,318 |
| 14063 | Saturn | ION | 2004 | 24,684 |
| 13454 | Chevrolet | Cobalt | 2005 | 30,057 |
| 14063 | Saturn | ION | 2005 | 17,006 |
| 14063 | Chevrolet | HHR | 2006 | 27,151 |
| 13454 | Chevrolet | Cobalt | 2006 | 50,343 |
| 14063 | Saturn | ION | 2006 | 24,216 |
| 14063 | Pontiac | Solstice | 2006 | 2,639 |
| 14063 | Chevrolet | HHR | 2007 | 25,068 |
| 13454 | Chevrolet | Cobalt | 2007 | 51,953 |
| 14063 | Saturn | ION | 2007 | 26,169 |
| 13454 | Pontiac | G5 | 2007 | 4,170 |
| 14063 | Pontiac | Solstice | 2007 | 3,461 |
| 14063 | Saturn | Sky | 2007 | 2,455 |
| 14092 | Chevrolet | HHR | 2008 | 10,721 |
| 14092 | Chevrolet | Cobalt | 2008 | 19,368 |
| 14092 | Pontiac | G5 | 2008 | 1,815 |
| 14092 | Pontiac | Solstice | 2008 | 1,677 |
| 14092 | Saturn | Sky | 2008 | 1,327 |
| 14092 | Chevrolet | HHR | 2009 | 10,612 |

3

| 14092 | Chevrolet | Cobalt | 2009 | 18,369 |
|---|---|---|---|---|
| 14092 | Pontiac | G5 | 2009 | 2,394 |
| 14092 | Pontiac | Solstice | 2009 | 513 |
| 14092 | Saturn | Sky | 2009 | 471 |
| 14092 | Chevrolet | HHR | 2010 | 7,426 |
| 14092 | Chevrolet | Cobalt | 2010 | 14,272 |
| 14092 | Pontiac | Solstice | 2010 | 1 |
| 14092 | Saturn | Sky | 2010 | 2 |
| 14092 | Pontiac | G5 | 2010 | 0 |
| 14092 | Chevrolet | HHR | 2011 | 6,867 |
| | **Totals** | | | **403,525** |

7. New GM is currently storing the number of switches indicated in the table in Paragraph 6.

8. Agreed Parts Preservation Order No. 1 specifically stated that, "New GM is not required to preserve ignition switch parts covered by NHTSA Recall Campaign 14v-047000 over and above the number of parts identified in" the table above.

9. The Parties agree that based on the above representations New GM has preserved or taken reasonable steps to obtain, preserve, and comply with prior Court orders regarding ignition switch parts recalled under NHTSA Recall Campaign 14v-047000.

### III. Protocol for Sampling and Testing of Ignition Switch Parts

10. The Parties agree it will be beneficial to permit their respective consulting and/or testifying experts to test some of the recalled ignition switch parts. Accordingly, for good cause shown, the Court orders the following with respect to the recalled ignition switch parts that have, to date, been preserved by New GM. This Order supersedes Order No. 1 (Docket No. 238) and Agreed Parts Preservation Order No. 1 with respect to the Sample Switches.

A.  **Sampling Protocol**

11. Approximately 2,000 preserved recalled ignition switch parts (the "Sample Switches") shall be made available to any Party for non-destructive testing by the Party's consulting and testifying experts.

12. These Sample Switches shall be randomly selected out of the ignition switches currently being preserved by New GM, as described above in Paragraph 6, using a procedure agreed to by all parties. The Parties agree that the agreed selection procedure will result in a random sample of the preserved recalled ignition switches, and no Party may argue otherwise for any purpose in litigation.

13. The Sample Switches shall, regardless of the condition, location, or custodian of any given Sample Switch, be deemed preserved by New GM in accordance with Agreed Preservation Order No. 1, and shall fully count toward the number of recalled ignition switch parts required to be preserved by New GM under that Order.

B.  **Inspection Procedures**

14. All Parties shall have access to the Sample Switches in order to photograph, film, inspect, disassemble, and test (collectively, "Inspect") the Sample Switches, so long as the Sample Switches are returned to their original condition upon completion of such Inspection. No party shall conduct destructive Inspection on any Sample Switch absent further order from the Court. If any Party believes that a planned Inspection may result in the partial or complete destruction of a Sample Switch, that Party shall notify the other Parties of the potential destruction and shall not proceed with such Inspection unless and until it has obtained further written agreement from the other Parties or a Court order allowing such Inspection.

15. New GM shall make the Sample Switches available to any Party, including New GM itself, upon a written agreement among the Parties specifying (a) the type of Inspection

proposed, (b) the Sample Switches requested, and (c) the length of time the Sample Switches are needed.  A Party making such a request shall request only the Samples Switches it needs at that time, and shall promptly return the switches to New GM upon completion of the requested Inspection.

16. Each Party may develop its own inspection or testing procedures not inconsistent with this Order, subject to agreement from the other Parties. The Parties may agree, in writing, on any details of testing or inspection that are not prohibited by this Order without further order of the Court, which agreement will not be unreasonably withheld.  Any agreement by a Party to a proposed test or inspection under this Order shall not be considered the Party's agreement that the inspection or test is scientifically valid or would yield admissible evidence, and no Party shall seek to introduce evidence of another Party's agreement to such inspection or test in any proceeding except to the extent the Party's right to conduct that inspection or test is challenged. If the Parties disagree on one or more details of proposed testing or inspection, each interested Party shall submit a letter brief explaining its position, and the proposed testing or inspection shall not proceed until the Court resolves the disagreement.

17. New GM shall create a chain of custody form for each Sample Switch.  Any Party that has possession, custody, or control of a Sample Switch shall be responsible for maintaining and updating the chain of custody form for that Sample Switch.

18. The Party conducting the Inspection of any Sample Switch need not permit any other Party or its representatives to be present for such Inspection. The Party conducting any Inspection shall, however, (1) document and photograph the condition of each Sample Switch before it begins Inspection of that Sample Switch, (2) document all steps taken during Inspection, and (3) document and photograph the condition of the Sample Switch immediately

upon the completion of Inspection.  If a dispute arises regarding whether a Sample Switch was returned to its original condition following Inspection, the Party conducting the Inspection shall promptly produce items (1) through (3) above as part of the discovery process.  If a Party willfully or recklessly violates this order or any agreed Inspection procedures and causes damage to or destruction of a Sample Switch, it shall be subject to sanctions.

### C. Additional Provisions

19. The parties agree that any and all information, including documents, photographs, video recordings, and sound recordings, obtained by any party during inspection or testing of a recalled ignition switch part may be designated "confidential" in accordance with the Protective Order entered in this action. No party or other person is permitted to use any information obtained during such an inspection or test for any purpose other than to prosecute or defend against the claims asserted in any action brought by any Party.

20. No Party waives any objection to any use, including admissibility into evidence, of any information, including documents, photographs, video recordings, sound recordings, data, and opinions, obtained during or derived from inspection or testing of any recalled ignition switch part.  All such objections are expressly preserved by all Parties.

21. Nothing in this Order prevents the Parties from agreeing to or seeking entry of additional inspection or testing protocols for other parts not covered by this order.

22. Any Party may apply to the Court for modification of this Order upon a showing of good cause.

/s/ Steve W. Berman
Steve W. Berman
Hagens Berman Sobol
Shapiro LLP
1918 Eighth Ave., Suite 3300
Seattle, WA 98101
*Lead Counsel*

/s/ Robert C. Hilliard
Robert C. Hilliard
Hilliard Muñoz Gonzales L.L.P.
719 S. Shoreline Blvd., # 500
Corpus Christi, TX 78401
*Lead Counsel*

/s/ Elizabeth J. Cabraser
Elizabeth J. Cabraser
Lieff Cabraser Heimann &
Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
*Lead Counsel*

/s/ Richard C. Godfrey, P.C.
Richard C. Godfrey, P.C.
Kirkland & Ellis LLP
300 N. LaSalle Street
Chicago, IL 60654
*Counsel for Defendant General Motors LLC*

SO ORDERED.

Dated:   April 27, 2015
         New York, New York

_____
JESSE M. FURMAN
United States District Judge

8